United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>Luis Hernandez,<br><br>Debtor. | Bankruptcy No. 15-bk-13715 |
| Luis Hernandez,<br>Plaintiff<br>v.<br>Park Federal National Savings Bank,<br>Defendant. | Chapter 13<br>Adversary No. 15-ap-00485 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AMENDED COMPLAINT TO TURNOVER MULTI-UNIT RESIDENTIAL BUILDING

Chapter 13 debtor, Luis Hernandez ("Debtor"), filed an amended complaint seeking turnover of a multi-unit residential building from the defendant and mortgagee-in-possession, Park Federal Savings Bank (the "Bank"). Debtor also requested an accounting from the Bank for the months since the Bank gained possession of the property. The Bank obtained possession during foreclosure proceedings commenced by the Bank against the property at issue in this case prior to filing of the above-captioned bankruptcy case. Debtor claims that turnover is in the best interest of creditors and necessary for Debtor's reorganization because rents and income derived from the property is needed to fund Debtor's proposed chapter 13 plan.

Following trial on the evidence, both parties having rested and presented final arguments at the close of the evidence, the Court now makes and enters its Findings of Fact and Conclusions of Law. As discussed below, it is found and held that turnover of the property at issue is in the best interest of creditors and necessary for Debtor's reorganization under his proposed chapter 13 plan. Accordingly, turnover and an accounting for all periods not earlier accounted for will be granted by separate order.

## FINDINGS OF FACT

### a. Undisputed Facts

Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on April 17, 2015. (Answer ¶ 1) Debtor is an individual residing at 3218 S Komensky, Chicago, IL 60623. (*Id.* ¶ 7)

Debtor owns a multi-unit residential building commonly known as 2742 South Springfield, Chicago, Illinois (the "Property"), which is subject to a mortgage granted by the Debtor to the Bank. (*See id.* ¶¶ 6, 9, 10) The Bank filed a foreclosure action against the Debtor and the Property prior to the filing of Debtor's bankruptcy case, and such case remains pending in state court. (*See id.* ¶ 11) During the foreclosure proceedings, the Bank sought and obtained possession of the Property. (*Id.* ¶ 12)

The Bank gained and has remained in possession the Property pursuant to an Order Placing Mortgagee in Possession for Multi-Unit Residential for Property, entered by the Circuit Court of Cook County, Illinois, on March 25, 2014. (*Id.* ¶ 9; PX A)

The Property is a 2-unit residential building with a basement apartment. The property is presently vacant. (*Id.* ¶ 13, 14)

### b. Debtor's Trial Testimony

Debtor's evidence showed that the Property was in habitable condition and rental units were occupied when the Bank took possession of the Property in March 2014. (*See* Am. Compl. ¶ 14) During trial on February 18, 2016, the Debtor testified that two rental units were occupied at the time. He testified that he visited the Property approximately two months prior to trial and from what he saw learned that the rental units are now unoccupied. The Bank presented no evidence to the contrary or otherwise attempt to dispute Debtor's testimony.

Debtor claims that the Bank collected rents from the rental units at some times but has not accounted for the amounts received or expenses for the Property since August 31, 2014. (*Id.* ¶¶ 15, 17) During trial, Debtor testified that he has not received rents from the Property since the Bank gained possession of the Property, and has not received any

information about rents received or expenses. The Bank presented no evidence to the contrary during trial, or otherwise challenge the testimony of the Debtor.

Debtor also testified that, during the pendency of this bankruptcy case, he has made all required monthly payments to the Chapter 13 trustee and all mortgage payments to the Bank directly. Debtor's current proposed chapter 13 plan contemplates payment of all arrearages and principal due to the Bank on the Property. Debtor testified that his proposed chapter 13 plan depends on some income to be derived from rents of the Property in order to pay the Bank all amounts due and satisfy real estate tax obligations on the Property. However, Debtor cannot maintain current Bank payments without income deriving from rents of the Property. The Bank presented no evidence to the contrary during trial, nor otherwise disputed Debtor's testimony that he had made necessary payments to the Bank and the chapter 13 trustee.

Debtor testified that he stopped making payments to the Bank prior to commencement of foreclosure proceedings because he lost his job at the time. He has since become employed and believes he will be able to meet his obligations to the Bank in order to retain the Property pursuant to a chapter 13 plan. Debtor's testimony was not disputed by the Bank during trial by evidence or on cross-examination.

Debtor claims that prior to the Bank taking possession of the Property in March 2014, Debtor managed the property through an agent and was able to manage the property, collect rents and perform most required repairs more economically and efficiently than the Bank can. (Am. Compl. ¶ 16) Debtor testified to this effect during trial. The Bank did not challenge Debtor's testimony or has argued otherwise.

Aside from Debtor's testimony and exhibits attached to the amended complaint, no other evidence was presented during trial on February 18, 2016. The Bank did not present or seek to present any other exhibits or testimony to challenge the exhibits and testimony presented by Debtor in support of allegations made in the Amended Complaint not previously admitted by the Bank in its Answer to the Amended Complaint.

Upon further inquiry by the Court during trial, Counsel for the Bank admitted only that the Property had been vacant for "several months," but did not know for how long or why the Property remained vacant.

## CONCLUSIONS OF LAW

### JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is thereby referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(E).

### TURNOVER AND ACCOUNTING BY CUSTODIAN

Debtor's entitlement for relief is provided by sections 542 and 543 of the Bankruptcy Code, 11 U.S.C. § 101 *et al.*, governing turnover of property to the estate. Subject to exceptions not applicable in this case, § 542(a) provides that:

> [A]n entity, *other than a custodian*, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property unless such property is of inconsequential value or benefit to the estate."

11 U.S.C. § 542(a) (emphasis added). The term "custodian" is defined to include a "trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." 11 U.S.C. § 101(11)(C). Therefore, the defendant is such a "custodian."

Turnover of property by a custodian is, in turn, governed by § 543 of the Bankruptcy Code. Under § 543(a), a custodian "may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control

of such custodian, except such action as is necessary to preserve such property."

Subsection (b), in turn, further provides that:

> A custodian shall--
> **(1)** deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
> **(2)** file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

11 U.S.C. § 543(b). Turnover "to the trustee" means turnover to the Debtor in this case, as debtor in a chapter 13 case. *See* 11 U.S.C. § 1303; *In re Franklin*, 476 B.R. 545 (Bankr. N.D. Ill. 2012).

It is undisputed that the Bank had notice of the filing of Debtor's case, as evidenced by the Bank's appearance in this case shortly after the case was filed. (*See* Motion for Order Confirming that Automatic Stay is not in Effect, April 30, 2015, Dkt. No. 13; *see also* Dkt. Nos. 28 (Order Denying Motion to Confirm Automatic Stay is not in Effect), 29 (Order Imposing Automatic Stay)) The Bank nonetheless has failed to deliver possession of the Property or file an accounting with respect to the Property.

Pursuant to § 543(d), the Court may excuse compliance with the above-described provisions, after notice and a hearing, "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property . . . ." 11 U.S.C. § 543(d)(1). The Court "shall excuse compliance with subsections (a) and (b)(1) of [§ 523] if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, *unless compliance with such subsections is necessary to prevent fraud or injustice*." 11 U.S.C. § 543(d)(2) (emphasis applied).

In this case, the Bank obtained possession of the Property more than 120 days prior to the filing of Debtor's bankruptcy case. While compliance with § 523(a) and (b) is mandatory and self-executing, the Bank has not sought to be excused from complying with

5

the requirements set forth therein. Debtor has filed its amended complaint seeking enforcement of these provisions and requests an Order for turnover of the Property and an accounting.

As noted above, the evidence presented by the Debtor shows that although the Property was being rented at the time the Bank gained possession in March 2014, the property is currently vacant, with no information being supplied by the Bank as to the conditions of the Property or the amount of time the property has remained vacant for. The Debtor's uncontested evidence also shows that the Bank has not delivered an accounting since August 31, 2014. Because compliance with § 543(b)(2)—requiring custodians to account for property in their custody—is mandatory, and the Bank has not sought to be excused from compliance with this provision in accordance with § 543(d)(1), an accounting will be ordered and must be delivered by the Bank, even if turnover of Property to the Debtor were not determined to be appropriate in this case.

Turnover of the Property to the Debtor is also warranted pursuant to § 543(d)(2), as "necessary to prevent fraud or injustice." Debtor's proposed chapter 13 plan (*see, e.g.*, Dkt. No. 73) contemplates payment of all principal and interest due to the Bank on account of its mortgage on the Property. However, Debtor may not fully determine the amounts owed until an accounting is delivered. As mentioned above, the Bank has not sought to be excused from complying with these mandatory provisions, even after the Court denied relief from the automatic stay as to the Property. (*See* Dkt. Nos. 28 (Order Denying Motion to Confirm Automatic Stay is not in Effect), 29 (Order Imposing Automatic Stay))

Moreover, Debtor's undisputed testimony during trial suggests that failure to turn over the Property in this case injures the Debtor's chances to reorganize, and is otherwise without justification in this case. Debtor testified that the Property's rental units were being rented at the time the Bank gained possession during foreclosure proceedings in March 2014, but the units are no longer being rented. The Bank gave no reason for this status or explain why the properties became and have remained vacant.

On the other hand, Debtor's testimony and the evidence in this case suggests that the Property was being well managed by him and can be rehabilitated and rented by the Debtor

6

to support Debtor's ability to confirm and meet his obligations under a chapter 13 plan. No other evidence in this case suggests that the Bank would be injured if turnover is ordered in this case. Denial of turnover, while the Property remains unrented and unproductive without explanation, is wholly unjustified and would injure the Debtor and his reasonable prospects of a successful reorganization. Under these circumstances, turnover is required to prevent the Bank from continuing to hold the property unproductive thus constituting fraud and injustice. *See generally In re Franklin*, 476 B.R. 545 (Bankr. N.D. Ill. 2012) (excusing compliance with § 543's turnover requirement where the evidence showed that the debtor had mismanaged rental property and the debtor had no reasonable prospects of a successful reorganization).

## CONCLUSION

For the foregoing reasons, the Debtor has shown that turnover and an accounting is justified in this case in accordance with 11 U.S.C. § 543. Such relief will therefore be granted by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

MAR 14 2016

Dated this 14th day of March, 2016